IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUSAN FENNELL, individually and on
behalf of all others similarly situated,

    *Plaintiff*,

                                    **Case No: 6:17-cv-02083-RBD-DCI**

v.

NAVIENT SOLUTIONS, LLC,

    *Defendant*.

_____/

## **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

COMES NOW Susan Fennell, individually and on behalf of all others similarly situated,

and files this Motion for Class Certification.

| | |
|---|---|
| W. Craft Hughes (*pro hac vice*) | Christopher W. Boss, Esq. |
| Jarrett L. Ellzey (*pro hac vice*) | Florida Bar No.: 13183 |
| HUGHES ELLZEY, LLP | BOSS LAW FIRM, PLLC |
| 2700 Post Oak Blvd., Suite 1120 | 9887 Fourth Street North, Suite 202 |
| Houston, TX 77056 | St. Petersburg, FL 33702 |
| Phone (713) 322-6387 | Telephone: (727) 471-0039 |
| Facsimile (888) 995-3335 | Facsimile: (888) 449-8792 |
| craft@hughesellzey.com | cpservice@bosslegal.com |
| jarrett@hughesellzey.com | |

                                      ATTORNEYS FOR PLAINTIFF
                                      AND THE PUTATIVE CLASS

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  THE TELEPHONE CONSUMER PROTECTION ACT ................................... 2

III.  STATEMENT OF FACTS ................................................................................ 3

    A.  NSL's Class System Database .............................................................. 4

    B.  Genesys Autodialer ............................................................................... 5

    C.  Consent & Revocation .......................................................................... 6

    D.  NSL's K018 Letter ................................................................................ 7

    E.  Outbound Calls ..................................................................................... 8

IV.  LEGAL STANDARD ..................................................................................... 10

    A.  Standard of Review for Class Certification ........................................ 10

    B.  The Requirements for Class Certification Are Satisfied .................... 11

    C.  Certification of the Class is Appropriate ........................................... 12

    D.  The Class is Manageable and Clearly Ascertainable ......................... 12

    E.  The Proposed Class Satisfies the Requirements of Rule 23(a) ......... 14

        1.  Numerosity Requirement is Satisfied ...................................... 15

        2.  Commonality Requirement is Satisfied .................................... 16

        3.  Typicality Requirement is Satisfied ......................................... 17

        4.  Adequacy of Representation is Satisfied .................................. 18

    F.  The Proposed Class Satisfies The Requirements of Rule 23(b) ........ 18

        1.  Proposed Class Notice Procedure ............................................ 19

    G.  Rule 23(b)(3) Predominance .............................................................. 20

        1.  Statutory Violations of the TCPA Will Be Resolved With Proof Common to All Class Members ................................... 21

        2.  Whether NSL Used an ATDS Is a Common Legal Issue ........ 22

i

## TABLE OF CONTENTS

H.    Rule 23(b)(3) Superiority.........................................................................................24

V.    APPOINTMENT OF CLASS COUNSEL........................................................................26

VI.   REQUEST FOR ORAL HEARING ...............................................................................26

VII.  CONCLUSION ............................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alea London Ltd. v. Am. Home Servs., Inc.*,
    638 F.3d 768 (11th Cir. 2011) .................................................................... 2

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................... passim

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).................................................................... 19

*Brown v. Electrolux Home Products, Inc.*,
    817 F.3d 1225 (11th Cir. 2016) .......................................... 10, 20

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
    562 Fed. Appx. 782 (11th Cir. 2014)........................................ 12, 13

*Caldera v. Am. Med. Collection Agency*,
    320 F.R.D. 513 (C.D. Cal. 2017)............................................ 10

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ...................................... 15, 17, 19

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)...................................................................... 10

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) .......................................... 14

*De Leon-Granados v. Eller & Sons Trees, Inc.*,
    497 F.3d 1214 (11th Cir. 2007) .......................................... 18

*Fuller v. Becker & Poliakoff, P.A.*,
    197 F.R.D. 697 (M.D. Fla. 2000) ........................................ 14

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).................................................................... 16

*Grayson v. K Mart Corp.*,
    79 F.3d 1086 (11th Cir. 1996) .......................................... 25

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)...................................................................... 10

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**<u>Page(s)</u>**

*Ikuseghan v. MultiCare Health Sys.*,
    No. C14-5539, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ........................................ 10

*Karhu v. Vital Pharm., Inc.*,
    621 Fed. Appx. 945 (11th Cir. 2015)........................................................................... 11, 12, 13

*Kilgo v. Bowman Transp., Inc.*,
    789 F.2d 859 (11th Cir. 1986) .......................................................................................... 14

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) .................................................................................... 20, 23

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ...................................................................................... 16

*Little v. T-Mobile USA, Inc.*,
    691 F.3d 1302 (11th Cir. 2012) ...................................................................................... 11

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    569 U.S. 27 (2013)........................................................................................................ 10

*Mills v. Foremost Ins. Co.*,
    269 F.R.D. 663 (M.D. Fla. 2010) .................................................................................. 15

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012)........................................................................................................ 2

*Mitchem v. Ill. Collection Serv.*,
    271 F.R.D. 617 (N.D. Ill. 2011)..................................................................................... 10

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ....................................................................................... 16

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,
    2014 WL 7366255 (S.D. Fla. Dec. 24, 2014)............................................................. 1, 24

*Piazza v. Ebsco Indus., Inc.*,
    273 F.3d 1341 (11th Cir. 2001) ..................................................................................... 15

*Reyes v. BCA Fin. Services, Inc.*,
    2018 WL 3145807 (S.D. Fla. June 26, 2018) ............................................................. 1, 24

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Riffle v. Convergent Outsourcing, Inc.*,
311 F.R.D. 677 (M.D. Fla. 2015) ................................................................... 13

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
211 F.3d 1228 (11th Cir. 2000) ..................................................................... 20

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*,
601 F.3d 1159 (11th Cir. 2010) ..................................................................... 23

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir. 2002) ..................................................................... 24

*Stalley v. ADS All. Data Sys., Inc.*,
296 F.R.D. 670 (M.D. Fla. 2013) ................................................................... 13

*Valley Drug Co. v. Geneva Pharm., Inc.*,
350 F.3d 1181 (11th Cir. 2003) ..................................................................... 17

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ........................................................... 15, 18, 20

*Walewski v. Zenimax Media, Inc.*,
502 Fed. Appx. 857 (11th Cir. 2012) .............................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................... 10, 15

*Washington v. Brown & Williamson Tobacco Corp.*,
959 F.2d 1566 (11th Cir. 1992) ..................................................................... 10

*Whitaker v. Bennett Law, PLLC*,
No. 13-CV-3145-L NLS, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014).............................. 10

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ............................................................... 15, 16

*Zyburo v. NCSPlus, Inc.*,
44 F. Supp. 3d 500 (S.D.N.Y. 2014) ............................................................... 10

**Statutes**

105 Stat. 2394 ......................................................................................... 2

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

47 U.S.C. § 227 ........................................................................................................ 1, 21

47 U.S.C. § 227(b)(1)(A) ............................................................................................... 2

**Rules**

Fed. R. Civ. P. 1 ......................................................................................................... 23

Fed. R. Civ. P. 23 ....................................................................................................... 10

Fed. R. Civ. P. 23(a) .................................................................................... 9, 10, 11, 14

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 14

Fed. R. Civ. P. 23(a)(2) ............................................................................................... 15

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 16

Fed. R. Civ. P. 23(a)(4) ............................................................................................... 17

Fed. R. Civ. P. 23(b) ...................................................................................... 9, 11, 17

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 11

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 11

Fed. R. Civ. P. 23(b)(3) ........................................................................................ passim

Fed. R. Civ. P. 23(c)(2) ............................................................................................... 18

Fed. R. Civ. P. 23(g)(1) ............................................................................................... 25

Local Rule 3.01(j) ....................................................................................................... 25

Local Rule 4.04 ............................................................................................................. 1

Local Rule 4.04(b) ...................................................................................................... 18

**Other Authorities**

Manual for Complex Litigation, Fourth, § 21.21 ......................................................... 25

*Moore's Federal Practice* § 23.22 (3d ed. 1997) ......................................................... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Wright, *et al*., 7A Fed. Practice & Proc. § 1751 (3d ed. 2010).................................................... 10

## I.  INTRODUCTION

Plaintiff Susan Fennell files this Motion for Class Certification pursuant to Fed. R. Civ. P. 23 and Local Rule 4.04. Plaintiff filed this Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") action against defendant Navient Solutions, LLC ("NSL") for its uniform practice of making debt collection robocalls to the cellular telephones of borrowers even after the borrower tells NSL to stop calling. This case is well-suited for class treatment. NSL placed 9,645,524 outbound debt collection telephone calls to at least 27,397 customers who told NSL to stop calling during the class period from December 4, 2013 to October 31, 2018. The Supreme Court has held the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendants' course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "TCPA claims, in general, are well suited for class treatment." *Reyes v. BCA Fin. Services, Inc.*, 16-24077-CIV, 2018 WL 3145807, at *18 (S.D. Fla. June 26, 2018), reconsideration denied, 16-24077-CIV, 2018 WL 5004864 (S.D. Fla. Oct. 15, 2018); *see also Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) (TCPA classes are routinely certified as class actions). Thus, in similar cases involving alleged violations of the TCPA, courts have not hesitated to certify classes.

The present case is the very embodiment of those holdings. As detailed below, it involves a single consumer protection claim under a single federal statute, the TCPA, arising from telephone calls made to an identifiable group of individuals. The TCPA claim arises from and focuses on the conduct of NSL, *i.e.*, making automated debt collection calls after the borrower tells NSL to stop calling. Certification of the proposed TCPA class would further Rule 23's dual goals of efficiency and fairness. The claim involves common questions of law and fact that predominate over

individual ones, and ought to be adjudicated only once, through a single proceeding, rather than repeatedly in thousands of individual trials based on identical evidence. Critically, given the relatively modest value of any individual claims, without class certification, most or all of the individuals' claims would never be heard in any forum, under any procedure. A class action is the only way to ensure the fair and efficient litigation of these claims.

For these reasons, Plaintiff respectfully seeks certification under Rule 23(b)(3) of a class of borrowers who received an automated debt collection call after instructing NSL to stop calling. Plaintiff requests that the Court appoint her as Class Representative of the Class, and that her counsel be appointed Class Counsel.

## II.   THE TELEPHONE CONSUMER PROTECTION ACT

"The TCPA is essentially a strict liability statute … [and] does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted). As the Supreme Court has explained, Congress enacted the TCPA to prevent automated calls by companies that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012). Indeed, unlike many federal statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit "Congressional Findings." 105 Stat. 2394. Specifically, "[e]vidence compiled by Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012); *Id*. at § 10. *Mims* explicitly cited these Congressional Findings in noting that " 'automated or prerecorded telephone calls' made to private residences, Congress found, were rightly regarded by recipients as 'an invasion of privacy.' " *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

Liability arises when a call is made. *See* 47 U.S.C. § 227(b)(1)(A).

## III. STATEMENT OF FACTS

NSL maintains an electronic database of telephone numbers in its Class Servicing System ("Class System").[1] NSL used an autodialer from Noble Systems Corporation ("Noble") until 2016, then switched to autodialer from Genesys Telecommunications Laboratories, Inc. ("Genesys").[2] Consent to call a borrower's cell phone is obtained, documented, and managed by NSL.[3] NSL's Class System also records the date(s) when phone consent is obtained and changed.[4] Plaintiff continuously revoked her consent and it changed in NSL's Class System on: 12/9/2014, 1/20/2015, 11/3/2016, 3/7/2017, 3/27/2017, 10/27/2017. *Id*.

NSL admits its autodialers are predictive dialers.[5] NSL used two predictive dialers during the class period. NSL used Noble's Maestro dialer, version 7.0.2.26, from December 4, 2013 through mid-2016; and then switched to Genesys' Customer Interaction Center dialer ("CIC").[6]

---

[1] Reinhart Depo. (Ex.5) at 57:10-18, 63:23-64:3; Cannon Depo. (Ex.7) at 184:8-185:4; Dries Depo. (Ex.3) at 109:11-19. Plaintiff also incorporates by reference all the facts and exhibits contained and cited in her previous motions to compel (Doc.'s 46, 64, 80) and other pleadings filed in this matter.

[2] On or about December 1, 2016, Genesys acquired Interactive Intelligence, Inc. for about $1.4 billion. Most of the dialing manuals and documents received from Genesys are actually from Interactive Intelligence before it was acquired by Genesys. For simplicity, Plaintiff refers to all these documents as "Genesys" documents in this motion.

[3] Amended Genesys License and Sale Agreement (Ex.1) at p.2.

[4] Class System data (Ex.4) at pp. 25-27, 60, 64-66, 69.

[5] *See* Dries Depo. (Ex.3) at 86:18-20 (call mode one is "predictive" in the Genesys dialing system); 89:7-90:3 (predictive campaigns configured by NSL to automatically "dial enough numbers to keep all the agents talking on the phone when they become available"); 52:17-53:3 (NSL's dialing campaigns use a "predictive agent list" parameter that auto-dials phone numbers "without regard for [NSL] agent availability."); 56:14-17 (NSL's predictive dialing campaigns are configured to run on specific hardware).

[6] *See* Noble subpoena response (Ex.2); Declaration of Randall A. Snyder (Ex.10), including the exhibits discussing Noble Maestro Dialing Manual (NSL_SF_0000109-1500) and Genesys CIC Configuration Guide (GENESYS-FEN 000001-352).

---

The Genesys dialing system actually dials the phone numbers predictively until a borrower picks up or answers.[7] From the Class System database, NSL uploads the borrower phone numbers to its automatic dialing systems.[8] NSL configured the autodialers to sort and sequence phone numbers according to delinquency of loan payments on each borrower account.[9] For example, "early" delinquency dialing campaigns only call borrowers who missed payments within the past month, "mid" delinquency dialing campaigns only call borrowers who missed payments in the past 1-6 months, and "late" delinquency dialing campaigns only call borrowers who missed more than 6 months of payments.[10]

NSL's call logs are saved "indefinitely" and electronically stored in a data enterprise warehouse located in Fishers, Indiana.[11] The past five years of NSL's call logs are "guaranteed to be accurate."[12] All these dialing campaigns are generated from the Class System data.[13] NSL used these dialers to place "automated" calls to Plaintiff and the putative class of borrowers without their consent.[14]

A.    NSL'S CLASS SYSTEM DATABASE

NSL's Class System maintains electronic records and information on all of its approximately 10 million borrower accounts, including cellular telephone numbers, mailing

---

[7] Dries Depo. (Ex.3) at 89:18-24.

[8] Dries Depo. (Ex.3) at 86:18-20.

[9] Dries Depo. (Ex.3) at 77:16-18.

[10] Dries Depo. (Ex.3) at 78:2-21.

[11] Dries Depo. (Ex.3) at 18:9-19, 36:21-37:2, 107:3-9.

[12] *Id.*

[13] Dries Depo. (Ex.3) at 79:3-13.

[14] Dries Depo. (Ex.3) at 118:7-21 (NSL's corporate representative testifying that it's "more efficient" to call using a "predictive or power mode" when NSL calls "hundreds of thousands of people.").

addresses, and other demographic information.[15] All the letters and correspondence NSL sends to its borrowers on federal loans are generated and mailed through its electronic Class System.[16] The Class System can locate any borrower's account by searching social security numbers,[17] it automatically flags a borrower's account if the borrower doesn't make a payment,[18] and it automatically updates borrower information daily.[19] When a borrower changes his or her phone number, the Class System flags it as a "critical change" and documents the "critical change history" for each borrower.[20] This "critical change history" shows the telephone numbers for each borrower in the Class System, including cell, home, work, and other numbers.[21]

### B.    GENESYS AUTODIALER

One of the "major components" of the Genesys CIC dialing system is the "automated attendant functionality" that automatically connects the caller to the NSL agent.[22] Call mode one in the Genesys dialer is "predictive" dialing mode (automatically dials "enough numbers to keep all the agents talking on the phone when they become available").[23] Call mode two in the Genesys dialer is "power" dialing mode (automatically dials numbers only when the NSL agents are

---

[15] Reinhart Depo. (Ex.5) at 57:10-18, 63:23-64:3, 67:16; Cannon Depo. (Ex.7) at 184:8-185:4; Dries Depo. (Ex.3) at 69:20-70:4, 109:11-19.

[16] Reinhart Depo. (Ex.5) at 58:18-59:3.

[17] Reinhart Depo. (Ex.5) at 111:16-23.

[18] Dries Depo. (Ex.3) at 71:19-72:19.

[19] Dries Depo. (Ex.3) at 75:15-20, 98:17-99:8.

[20] Cannon Depo. (Ex.7) at 158:3-159:2, 184:8-185:4.

[21] Cannon Depo. (Ex.7) at 203:8-204:4.

[22] *See* Declaration of Randall A. Snyder (Ex.10) (exhibits bates-labeled GENESYS-FEN 000394, 453, 476) (Genesys Service Levels).

[23] Dries Depo. (Ex.3) at 86:18-20, 89:7-90:3 (predictive mode).

available).[24] The Genesys system has two types of session licenses (concurrent sessions and time-based sessions).[25] NSL paid Genesys over $15 Million for its dialing system, including equipment, software, training, and maintenance.[26]

### C.   CONSENT & REVOCATION

NSL "is responsible for obtaining, documenting and managing all required consents" from the borrowers before calling their cell phones.[27] NSL stores "TCPA consent" of borrowers electronically in the Class System.[28] NSL's Class System tracks whether NSL obtained consent to "autodial a cell phone."[29] NSL can electronically search the Class System database and determine the total number of accounts tagged with TCPA consent (or no consent) from borrowers.[30] The TCPA consent from the borrower is updated every morning in the Class System and linked to its automatic dialing campaigns.[31]

The Class System also has a screen that indicates whether NSL has consent to autodial a borrower's cell phone.[32] NSL has ESI and documents showing the date when each individual borrower revoked consent and/or provided consent for NSL to call their cellular telephone from December 4, 2013 to present. NSL has an automated "tracking system" within the Class System

---

[24] Dries Depo. (Ex.3) at 86:21-22, 90:4-24 (power mode launches calls on behalf of the NSL agents and connects the calls to the NSL agents "only when a live party answers.").

[25] *See* Declaration of Randall A. Snyder (Ex.10) (exhibits bates-labeled GENESYS-FEN 000384) (Session License in Sale Agreement signed with Genesys).

[26] *Id.* (exhibits bates-labeled GENESYS-FEN 000379) (Genesys Invoice Grand Total).

[27] *See* Amended License and Sale Agreement (Ex.1) (GENESYS-FEN 000574).

[28] Reinhart Depo. (Ex.5) at 76:8-12; Dries Depo. (Ex.3) at 100:17-101:10, 162:17-24.

[29] Cannon Depo. (Ex.7) at 266:6-12.

[30] Dries Depo. (Ex.3) at 163:16-164:2.

[31] Reinhart Depo. (Ex.5) at 83:3-13; Dries Depo. (Ex.3) at 115:5-22.

[32] Reinhart Depo. (Ex.5) at 65:13-22; Cannon Depo. (Ex.7) at 265:19-266:12.

that displays the borrower(s) cell phone number and electronically flags whether NSL has obtained consent from the borrower to call his/her cell phone.[33] It's called the phone number detail (PND) table in NSL's dialing system.[34] The Class System maintains electronic records of whether NSL has consent from the borrower to auto dial his/her cell phone.[35]

### D.    NSL'S K018 LETTER

NSL mailed a form letter to Plaintiff and other borrowers after they told NSL to stop calling (the "K018 Letter").[36] NSL mails the K018 Letter according to the borrower's *account number* – which may contain both private and federal loans.[37] NSL knows the borrower asked NSL to stop calling because it's acknowledged in the K018 Letter (you recently … "requested that we [NSL] stop contacting you").[38] However, NSL uniformly ignores these requests as part of claimed "due diligence" requirement and continues calling all borrowers.[39]

NSL mailed Form Letter K018 to Plaintiff and putative class members from December 4, 2013 to present.[40] Form Letter K018 is automatically generated and mailed by NSL's Class System.[41] Using the 151 screen in the Class System, NSL's agent simply hits the enter button and the Form Letter K018 is automatically generated and mailed to the borrower the following

---

[33] Reinhart Depo. (Ex.5) at 65:13-66:3; Cannon Depo. (Ex.7) at 265:19-266:12; Dries Depo. (Ex.3) at 162:17-24, 166:8-15.

[34] Dries Depo. (Ex.3) at 113:13-114:3.

[35] Reinhart Depo. (Ex.5) at 136:17-137:11.

[36] Reinhart Depo. (Ex.5) at 52:21-55:5, 72:21-73:22; Form Letter K018 (Ex.8).

[37] Plaintiff has a private loan and federal loans serviced by NSL under her account number.

[38] Reinhart Depo. (Ex.5) at 92:14-93:9.

[39] Reinhart Depo. (Ex.5) at 92:14-93:9; Cannon Depo. (Ex.7) at 135:18-136:7.

[40] Cannon Depo. (Ex.7) at 128:12-15; Class System data (Ex.4) at pp. 68-69.

[41] Cannon Depo. (Ex.7) at 125:11-127:13.

morning.[42] The Class System automatically pulls the borrower's mailing address from the borrower's account and inserts it into the Form Letter K018.[43] The Class System keeps a record of each time the Form Letter K018 is mailed to a borrower, and NSL also stores scanned copies of each letter on its document capture system (DCS).[44] The Class System stores the name, mailing address, e-mail address, and phone number of everyone who received Form Letter K018 from December 4, 2013 to present.[45] It also stores electronic records of each Form Letter K018 sent to a borrower, the date it was sent, and all other communications with borrowers, including phone calls, e-mails, faxes, and other mail.[46]

### E. OUTBOUND CALLS

NSL has ESI and documents showing all outbound phone calls it placed to individuals who received Form Letter K018 from December 4, 2013 to present. NSL dialing systems keep electronic records of all outbound calls to the borrowers "indefinitely" – and all information within the past five years is "guaranteed to be accurate."[47] The Class System is electronically linked to NSL's dialing system.[48] The borrower's cell phone number is automatically transferred from the Class System into NSL's dialing systems through the Strata engine.[49] The Strata engine sorts and

---

[42] Reinhart Depo. (Ex.5) at 61:11-62:17; Cannon Depo. (Ex.7) at 127:21-129:10.

[43] Reinhart Depo. (Ex.5) at 63:4-18.

[44] Reinhart Depo. (Ex.5) at 67:17-20; Cannon Depo. (Ex.7) at 149:15-23.

[45] Reinhart Depo. (Ex.5) at 97:19-99:12.

[46] *Id*; Class System data (Ex.4) at pp. 68-69.

[47] Dries Depo. (Ex.3) at 18:9-19.

[48] Dries Depo. (Ex.3) at 65:16-23.

[49] Dries Depo. (Ex.3) at 66:7-12, 68:15-20, 69:6-17, 73:11-16, 111:21-112:18.

filters the borrower account files from the Class System based on the stage of delinquency before loading them into NSL's dialing system.[50]

After the borrower data is uploaded, NSL's dialing systems automatically dial the phone numbers based on the corresponding electronic record and dialing campaign.[51] The Class System automatically calls a borrower through NSL's dialing system if the agent clicks a phone number in the Class System.[52] The Class System is programmed to automatically flag and extract delinquent borrower accounts and transfer copies of the account files to NSL's dialing systems to be called.[53] NSL's Class System electronically stores Plaintiff's cell phone number (321) 557-1308 and all her account information.[54] NSL's dialing system automatically fetched the Plaintiff's cell phone number and her account information from the Class System before calling her.[55]

NSL has between 600 to 1,000 different dialing campaigns that make outbound calls to borrowers like Plaintiff, including automated dialing campaigns.[56] Specifically, NSL creates auto-dialing campaigns to call borrowers that are "30 days delinquent."[57] The same dialing system NSL used to create the automated dialing campaigns also called the Plaintiff in this case.[58] NSL creates a customized name for each dialing campaign – it's not generated by the dialing system.[59] NSL's corporate representative is able to determine if Plaintiff's cell phone number was called by any

---

[50] Dries Depo. (Ex.3) at 69:6-17.

[51] Dries Depo. (Ex.3) at 77:2-14.

[52] Dries Depo. (Ex.3) at 92:17-24, 93:7-19, 121:21-122:5.

[53] Dries Depo. (Ex.3) at 70:5-24, 74:5-15, 75:9-14, 97:16-20.

[54] Dries Depo. (Ex.3) at 72:20-73:3.

[55] Dries Depo. (Ex.3) at 79:23-80:3.

[56] Dries Depo. (Ex.3) at 53:8-54:13.

[57] Dries Depo. (Ex.3) at 55:11-20.

[58] Dries Depo. (Ex.3) at 56:4-22.

[59] Dries Depo. (Ex.3) at 57:2-12.

one of the other 600-1,000 automatic dialing campaigns – but he didn't want to look – and he doesn't know if anyone at NSL has looked either.[60] NSL doesn't know when the CUREs grid dialing campaign was created and it's possible that Plaintiff's phone number is the only phone number in the entire campaign.[61]

## IV.   LEGAL STANDARD

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and one of the prongs of Rule 23(b). Rule 23's purpose is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there is none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al*., 7A Fed. Practice & Proc. § 1751 (3d ed. 2010). Consumer protection cases, like this one under the TCPA, arising from a single course of conduct affecting numerous consumers, are particularly amenable to class treatment. *See, e.g.*, *Amchem*, 521 U.S. at 625.

### A.   STANDARD OF REVIEW FOR CLASS CERTIFICATION

The Eleventh Circuit reviews a district court's grant of class certification for an abuse of discretion. *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir.2014). However, in the Eleventh Circuit, an abuse of discretion is a "continuum," and "in the context of class actions, review for abuse of discretion often 'does not differ greatly from review for error.'" *Electrolux*, 817 F.3d at 1233. It must, however, conduct a "rigorous analysis" to determine whether the putative class satisfies Rule 23's requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426 (2013); *Wal-Mart Stores, Inc. v.*

---

[60] Dries Depo. (Ex.3) at 80:11-22.
[61] Dries Depo. (Ex.3) at 102:12-18.

*Dukes*, 564 U.S. 338, 351 (2011). Applying these standards, courts routinely certify TCPA debt collection classes of borrowers.[62] This case should be no different.

### B. THE REQUIREMENTS FOR CLASS CERTIFICATION ARE SATISFIED

In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). Parties seeking class action certification must first satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation. *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Specifically, the four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of

---

[62] *See, e.g.*, *Meyer*, 707 F.3d at 1041 (certifying class of borrowers who received debt collection calls); *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying class of consumers who received automated calls from a collection agency, but did not give their cellular telephone numbers to the defendant); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (same); *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539, 2015 WL 4600818, *8 (W.D. Wash. July 29, 2015) (debt collection TCPA class certified); *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 520 (C.D. Cal. 2017) (same); *Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) (certifying class receiving debt collection calls "who did not provide prior express consent during the transaction that resulted in the debt owed").

Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. Here, Plaintiff asserts that class certification is appropriate pursuant to Rule 23(b)(2) and/or 23(b)(3).

### C.     CERTIFICATION OF THE CLASS IS APPROPRIATE

Plaintiff seeks certification under Rule 23(b)(3) of the following class:

> All persons in the United States whose (1) cellular telephone number was called by NSL; (2) with an automatic telephone dialing system; (3) without consent; (4) from December 4, 2013 to October 31, 2018.

This Class is appropriate for certification because it satisfies the requirements of Rule 23(a) and Rules 23(b)(2) and/or (b)(3).

### D.     THE CLASS IS MANAGEABLE AND CLEARLY ASCERTAINABLE

Before establishing the explicit requirements of Rule 23(a), the Eleventh Circuit imposes an implicit requirement that the Plaintiff must first establish that the proposed class is "adequately defined and clearly ascertainable." *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1303-04 (11th Cir. 2012). In order to establish ascertainability, the plaintiff must propose an "administratively feasible" method by which class members can be identified. *Karhu v. Vital Pharm., Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015). A plaintiff can establish ascertainability by asserting that class members can be identified using the defendant's records if the plaintiff also shows the records are useful for identification purposes and identification will be administratively feasible. *Karhu*, at 948. According to U.S. Magistrate Judge Jonathan Goodman's recent opinion in the Southern District of Florida, "ascertainability is a narrow inquiry" and "there is no categorical prohibition against using affidavits for identification purposes." *Reyes v. BCA Fin. Services, Inc.*, 16-24077-CIV, 2018 WL 3145807, at *11 (S.D. Fla. June 26, 2018), reconsideration *denied sub nom.*, 2018 WL 5004864 (S.D. Fla. Oct. 15, 2018) (citations omitted). The identification of class members should be "a manageable process that does not require much, if any, individual inquiry." *Bussey*

*v. Macon Cnty. Greyhound Park*, *Inc.*, 562 Fed. Appx. 782, 788 (11th Cir. 2014). An identifiable

class exists if its members can be ascertained by reference to objective criteria. *Bussey v. Macon*

*Cnty. Greyhound Park*, *Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014).

     Here, the Class definition relies on objective criteria verifiable through call records that

show whether NSL made an automated call to a borrower after revocation. Indeed, NSL's system

accurately and contemporaneously recorded the telephone numbers, dates, and times of each

outgoing call.[63] NSL tracks the precise individuals who comprise the Class in this case. Through

this common evidence, class membership can be readily determined. Whether Class members

received an automated call after revoking consent can be determined objectively because NSL's

call logs are "guaranteed to be accurate" and saved "indefinitely." *Id*.; *see also* Declaration of

Randall A. Snyder (Ex.10).

     Here, Plaintiff has identified an administratively feasible method by which the class

members can be identified electronically through NSL's Class System, correspondence files with

borrowers contact information, records of NSL sending Form Letter K018 to borrowers showing

classwide revocation of consent, and NSL's electronic records of call logs and "TCPA consent"

given by borrowers. NSL's electronic records and computer files in the Class System are useful

for borrower identification purposes and the identification is administratively feasible.

     NSL placed 9,645,524 outbound debt collection telephone calls to at least 27,397

customers who told NSL to stop calling during the class period from December 4, 2013 to October

31, 2018. *See* NSL's Supp. Interrogatory Answers (Ex.9). NSL also mailed a form letter to 9,943

---

    [63] The past five years of NSL's call logs are "guaranteed to be accurate," saved "indefinitely,"
and electronically stored in a data enterprise warehouse located in Fishers, Indiana. *See* Dries
Depo. (Ex.3) at 18:9-19, 36:21-37:2, 107:3-9.

people who requested NSL to stop calling his/her cell phone.[64] *Id.* The core concern is whether objectively verifiable proof exists regarding who does or does not fall within the defined putative class, and not the difficulty involved in obtaining such trustworthy evidence. *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 681 (M.D. Fla. 2015). *See also Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 679-80 (M.D. Fla. 2013), and *Bussey*, 562 Fed. Appx. at 788, which denied certification as to those class members as to whom Plaintiffs could not provide "*any*" indication that damage data could be obtained (emphasis in original).

The preferred Eleventh Circuit term is "administratively feasible," and not "administratively difficult," because the real requirement is that the Plaintiff show <u>how</u> defendant's records will permit accurate identification of class members. *Bussey*, ibid; *Karhu v. Vital Pharm., Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015); and *Walewski v. Zenimax Media, Inc.*, 502 Fed. Appx. 857, 861 (11th Cir. 2012) (ascertainability inquiry focusing on whether plaintiff had proposed a "workable method" for identifying class members). In the present case, NSL's own records clearly show the class is adequately defined and clearly ascertainable. These records precisely and definitively identify the putative Class, and no individualized inquiry is necessary. Thus, the ascertainability element has been met as to the putative Class as a whole.

### E.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)

Rule 23(a) sets forth four "threshold requirements" for all class actions—numerosity, commonality, typicality, and adequacy—which are all satisfied here. NSL placed 9,645,524 outbound debt collection telephone calls to at least 27,397 customers who told NSL to stop calling during the class period from December 4, 2013 to October 31, 2018. NSL also mailed a form letter to 9,943 people who requested NSL to stop calling his/her cell phone. Common sense therefore

---

[64] Reinhart Depo. (Ex.5) at 92:14-93:9.

indicates that the numerosity requirement is satisfied. From this information, the Court can easily conclude that the proposed class meets the numerosity requirement.

### 1.    Numerosity Requirement is Satisfied

Before a class can be certified, the court must determine that it is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). There is no rigid standard for determining numerosity. The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also* 5 James Wm. Moore *et al.*, *Moore's Federal Practice* § 23.22[3][a], at 23-63 (3d ed. 1997) (noting as a general rule that classes of 40 or more are numerous enough). Parties seeking class certification do not need to know the "precise number of class members," though they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). What is crucial is that the prospective class be so numerous as to make traditional joinder of its members impracticable. *Ibid.* Other factors the court may address include analyzing the size of the class, identifying its numbers and determining their addresses, the facility of making service on them if joined, and their geographic dispersion. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 670 (M.D. Fla. 2010). Here, NSL placed 9,645,524 outbound debt collection telephone calls to at least 27,397 customers who told NSL to stop calling during the class period from December 4, 2013 to October 31, 2018. NSL also mailed a form letter to 9,943 people who requested NSL to stop calling his/her cell phone. Common sense therefore indicates that the numerosity requirement is satisfied.

## 2.      Commonality Requirement is Satisfied

Rule 23(a)'s commonality prerequisite examines whether there "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality pertains to the class's characteristics as a whole, whereas typicality pertains to the individual characteristics of the named plaintiff in relation to the class. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). To meet Rule 23(a)(2)'s commonality requirement, plaintiff must demonstrate that the issues are susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). There must be a common contention – "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. 338, 350). Plaintiffs face a "low hurdle" in bearing this light burden, as commonality "does not require that all questions of law and fact raised be common." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009); and *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). "'[E]ven a single [common] question' will do." *Wal-Mart*, 564 U.S. 338, 359.

Whether class members received a call that violates the TCPA is a "common contention, capable of class-wide resolution." *See Sandusky Wellness Ctr.*, 821 F.3d at 998 (certifying TCPA class addressing faxes); *Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501, 502-03 (S.D. Ind. 2016) (commonality requirement satisfied in TCPA "wrong number" class). Thus, in TCPA cases, commonality is readily met, as class members receive the same or substantially similar automated calls from the same defendant. Here, Plaintiff and Class members share a single common question and the truth or falsity of its answer will resolve the validity of each TCPA claim in one stroke: Whether NSL made non-emergency automated debt collection calls to cellular telephones without the caller's consent. This question – and the answer it will generate – is common to the Class.

Indeed, NSL's own records and deponents confirm that NSL made such automated calls without the caller's consent.[65]

### 3.     Typicality Requirement is Satisfied

Though the issues of commonality and typicality require separate inquiries, the proof required for each tends to merge. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting how the requirements of commonality and typicality "merge"). A class may be certified if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claim of a class representative is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d at 1357 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). When there is a strong similarity of legal theories, the typicality requirement can be satisfied even if there are substantial factual differences. *Mohawk*, at 1356.

Here, Plaintiff's claims are typical of the claims of all Class members because they arise from the same course of conduct. Plaintiff, like all Class members, received automated debt collection calls from NSL. As with the other Class members, Plaintiff revoked her prior consent to NSL. *See* Plaintiff's Deposition Transcript excerpts (Ex.6); Exhibit 4. NSL has subjected all Class members, including Plaintiff, to the same harmful conduct in violation of the TCPA. This

---

[65] NSL uniformly ignores requests to stop calling and continues the calls anyway. *See* Reinhart Depo. (Ex.5) at 92:14-93:9; Cannon Depo. (Ex.7) at 135:18-136:7.

common conduct provides a common basis for the claims and damages of Plaintiff and the Class members. Plaintiff therefore has satisfied the typicality requirement.

### 4.    Adequacy of Representation is Satisfied

The final requirement of Rule 23 requires the representative party in a class action to fairly and adequately protect the interests of those he or she purports to represent. Fed. R. Civ. P. 23(a)(4). Adequacy of representation is tied to both commonality and typicality. *Amchem Prods.*, 521 U.S. at 626 n. 20 (1997). This "adequacy of representation" determination encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representative will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). However, the existence of "minor" conflicts alone will not defeat class certification. *Id.* To thwart certification the conflict must be a "fundamental" one going to the specific issues in controversy. *Id.*

Here, Plaintiff's interests are aligned with those of the Class because they have all been harmed by the same common misconduct – namely, automated calls to their cellular phones from NSL; thus Plaintiff has no conflicts of interest with other Class members. Further, Plaintiff has been, and continues to be, an engaged participant in this litigation, responding to discovery requests and making herself available for deposition testimony. Accordingly, the adequacy requirement is satisfied.

### F.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)

A class action may be maintained when it satisfies all the requirements of Rule 23(a) and at least one of the alternative requirements in Rule 23(b). *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). The Eleventh Circuit has observed that Rule 23(b)(3) requires findings both (1) that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and (2) that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256,

1277 (11th Cir. 2009). Rule 23(b)(3) "sets forth four specific (though non-exclusive)

considerations pertinent to these findings:

> (A)   the class members' interest in individually controlling the prosecution or
>         defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already
>         begun by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims
>         in the particular forum; and
>
> (D)   the likely difficulties in managing a class action."

*Id*. at 1277 (quoting Fed. R. Civ. P. 23(b)(3)); *see also De Leon-Granados v. Eller & Sons Trees*,

*Inc.*, 497 F.3d 1214, 1220 (11th Cir. 2007). In the present case, Plaintiff meets the certification

requirements in Rule 23(b)(3) as explained in more detail below.

### 1.     Proposed Class Notice Procedure

Plaintiff's proposed means of providing the class notice required by Rule 23(c)(2), and

defraying the cost of class notice, is explained below pursuant to Local Rule 4.04(b). Plaintiff

incorporates by reference herein the declaration of Randall A. Snyder (Ex.10) for all purposes.

All of the borrower names, addresses, and e-mail information are available within NSL's

existing data and records. If it were necessary to identify updated mailing addresses for any of

these borrowers, for purposes of mailing of notice of class certification, it could easily be achieved

by various means. For example, the addresses can be updated through the use of the United States

Postal Service (USPS) National Change of Address (NCOALink®) database, which contains

approximately 160 million records or 48 months of permanent addresses. The database is updated

daily and USPS regularly provides change-of-address information to its licensees. This process

helps reduce undeliverable-as-addressed (UAA) mail by correcting input addresses prior to mailing. Alternatively, the addresses can be updated through the use of the USPS' expanded National Change of Address, NCOA ANKLink®, database, which contains 96 months of permanent addresses. In other litigation, Plaintiff's counsel has coordinated with a data processors that offer skip-tracing services such as TransUnion or Microbilt to obtain updated addresses for those persons not in the NCOALink® or NCOA AnkLink® databases.

Plaintiff's counsel has experience coordinating notice of class certification in other TCPA litigation; and these address updating methodologies have been utilized by class action settlement administrators in hundreds of cases over several decades (*i.e.*, KCC, Rust, etc.). It's an administratively feasible and manageable process to provide notice of Class Certification to class members in TCPA cases like the present. The standard for the mailing of this notice is Rule 23 of the Federal Rules of Civil Procedures. The most efficient and cost-effective way to do so is to mail a postcard short-form notice to class members and make a long-form notice available *via* website.

### G.   Rule 23(b)(3) Predominance

The predominance requirement in Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Predominance is "readily met" in certain consumer cases. *See Amchem*, 521 U.S. at 625; *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) (affirming certification and holding false-safety ratings information on vehicles' window stickers predominated over individual ones). Indeed, the Supreme Court has held that, while Rule 23(b)(3) requires a showing that questions common to the class predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen*, 568 U.S. at 459. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to

select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id*.

The Eleventh Circuit has adopted the following "rule of thumb" in determining whether common questions predominate over the individual ones:

> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.... If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1235 (11th Cir. 2016) (citing *Vega*, 564 F.3d at 1270 (quoting *Klay*, 382 F.3d 1241, 1255)). Predominance may require a qualitative assessment and the "relative importance" of the common versus individual questions also matters. *Brown*, 817 F.3d at 1235 (11th Cir. 2016); *see also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (explaining that predominance can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action). When establishing predominance for Rule 23(b)(3) purposes, "it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Here, NSL' liability will be established through common evidence.

### 1. Statutory Violations of the TCPA Will Be Resolved With Proof Common to All Class Members

Class certification is normal in litigation under the TCPA because the claims, by their nature, involve large numbers of plaintiffs and a common course of conduct that affected each class member in the same way. In this case, the issues to be resolved pertain to NSL's conduct. Resolution of these core issues will turn on the same evidence from NSL's own call records. This common evidence will establish whether Plaintiff and Class members received automated debt

collection calls from NSL. Indeed, it is difficult to imagine how such evidence could possibly vary between Class members. For this reason, courts readily certify similar TCPA class actions.

Plaintiff's TCPA claims are particularly well-suited to class treatment because the case is entirely about a single uniform course of conduct directed to consumers – automated debt collection calls. These are exactly the type of cases that "the Advisory Committee sought to cover[,] in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

### 2.    Whether NSL Used an ATDS Is a Common Legal Issue

Under the TCPA, an ATDS is any "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." 47 U.S.C. § 227. The FCC has repeatedly held that predictive dialers meet the statutory definition of ATDS. In 2003, the FCC explicitly ordered "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."[66]  The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[67]  The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[68]  Here, NSL admits its dialers are

---

[66] *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,093 (2003).

[67] *Id.* at 14,143 n. 31.

[68] *Id.* at 14,092. The 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." 23 FCC Rcd. at 566.And in yet another order issued in 2012, the FCC again reiterated

"predictive dialers."[69] Therefore, the Court can rule decide the ATDS issue on a classwide basis.

NSL might argue the 2003, 2008, and 2013 FCC Orders were overturned by the D.C. Circuit in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). That argument is wishful thinking. The D.C. Circuit set aside two challenged portions of a separate 2015 Declaratory Ruling and Order, including finding the "Commission's explanation of which devices qualify as an ATDS" as overbroad because it could encompass any device, including smartphones, that could be modified with applications to make autodialed calls. *ACA Int'l*, 885 F.3d at 695. Specifically, the D.C. Circuit faulted the FCC for finding that a device's "capacity" encompasses its "potential functionalities" rather than merely its "present capacity." *Id.* at 693-94. This case does not involve a smartphone, but sophisticated commercial dialing equipment with the capacity to enable thousands of calls in a short amount of time. Thus, many courts have held the D.C. Circuit did not overturn the prior FCC orders. *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018) ("[T]he prior FCC Orders are still binding."); *see also McMillion*, 2018 WL 3023449; *Swaney v. Regions Bank*, No. 13-544, 2018 WL 2316452 (N.D. Ala. May 22, 2018).

In any case, even if the FCC Orders were not binding, the plain text of the TCPA can be

---

that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).

[69] *See* Dries Depo. (Ex.3) at 86:18-20 (call mode one is "predictive" in the Genesys dialing system); 89:7-90:3 (predictive campaigns configured by NSL to automatically "dial enough numbers to keep all the agents talking on the phone when they become available"); 52:17-53:3 (NSL's dialing campaigns use a "predictive agent list" parameter that auto-dials phone numbers "without regard for [NSL] agent availability."); 56:14-17 (NSL's predictive dialing campaigns are configured to run on specific hardware).

applied to NSL's dialers on a classwide basis. *See, e.g.*, *Meyer*, 707 F.3d at 1043 (finding—based on a plain reading of the TCPA itself—that a predictive dialer was an ATDS). Here, NSL's dialers have the capacity to function as an ATDS—and, in fact, function that way. NSL's autodialers store numbers to be called.[70] The dialers use algorithms to sort and sequence the phone numbers according to delinquency of loan payments on each borrower account.[71] Finally, NSL's dialers dial such numbers. Whether NSL's dialer meets the ATDS definition is a binary question: the dialer either is, or is not, an ATDS. The answer cannot vary from class member to class member.

## H.   RULE 23(b)(3) SUPERIORITY

The second prong of the analysis under Rule 23(b)(3) requires a court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also* Fed. R. Civ. P. 1 ("[Federal Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). The focus of this analysis in the Eleventh Circuit is on the relative advantages of a class action over whatever other form of litigation might realistically be available to plaintiffs. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010). As a result, the predominance analysis has a "tremendous impact on the superiority analysis" for the simple reason that the more common issues predominate, the more desirable a class action. *Id.* at 1184 (citing

---

[70] NSL's Class System electronically stores Plaintiff's cell phone number (321) 557-1308 and all her account information. *See* Dries Depo. (Ex.3) at 72:20-73:3.

[71] Dries Depo. (Ex.3) at 77:16-78:21. For example, "early" delinquency dialing campaigns only call borrowers who missed payments within the past month, "mid" delinquency dialing campaigns only call borrowers who missed payments in the past 1-6 months, and "late" delinquency dialing campaigns only call borrowers who missed more than 6 months of payments. *Id.*

*Klay*, 382 F.3d at 1269). The converse is also true in that the less common the issues, the less desirable a class action. *Id*.

Plaintiff has already demonstrated above how this case turns almost entirely on common questions of law and fact. Such demonstrated predominance is also relevant to a second aspect of superiority analysis, in that "the inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are particularly appropriate where "it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

As a general matter, TCPA classes are routinely certified as class actions because the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims" all point toward the superiority of a class action. *Reyes v. BCA Fin. Services, Inc.*, 16-24077-CIV, 2018 WL 3145807, at *18 (S.D. Fla. June 26, 2018), reconsideration denied, 16-24077-CIV, 2018 WL 5004864 (S.D. Fla. Oct. 15, 2018) (quoting *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014)). The Court considers: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Superiority is met here.

## V.   APPOINTMENT OF CLASS COUNSEL

Plaintiff requests that Hughes Ellzey, LLP and Boss Law Firm, PLLC, be appointed as Class Counsel for this action. Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and instructs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1). Here, Plaintiff's Counsel has already invested significant time and effort preparing this case. In addition to the hotly contested motion practice, Plaintiff's Counsel conducted thorough pre-filing investigations, obtained classwide discovery, met and conferred with NSL, and performed the critically important task of filing for class certification. *See* Hughes Decl. (Ex.12). Each of these steps has ensured the efficient progression of this case. Plaintiff's Counsel has solid experience and expertise litigating consumer class action cases generally—and particularly cases under the TCPA. *See*, *e.g.*, Hughes Decl. (Ex.12) and Boss Law Biography (Ex. 11). For these reasons, Plaintiff's Counsel satisfy Rule 23(g)(1) and should be appointed Class Counsel.

## VI.   REQUEST FOR ORAL HEARING

Plaintiff respectfully requests oral argument pursuant to Local Rule 3.01(j) and estimates the time required for argument to be less than 45 minutes. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1099 (11th Cir. 1996) ("A court may hold an evidentiary hearing prior to certifying a class."); Manual for Complex Litigation, Fourth, § 21.21 ("A hearing under Federal Rule of Civil Procedure 23(c) is a routine part of the certification decision.").

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification should be granted, the

Plaintiff, Ms. Fennell, should be appointed as Class Representative, and Plaintiff's counsel should

each be appointed Class Counsel.

Respectfully Submitted,

BOSS LAW FIRM, PLLC


_____/s/ Christopher W. Boss_____
Christopher W. Boss, Esq.
Fla. Bar No.: 13183
cpservice@bosslegal.com
9887 4th Street North, Suite 202
St. Petersburg, Florida 33702
Phone: (727) 471-0039
Fax: (888) 449-8792

HUGHES ELLZEY, LLP
W. Craft Hughes, Esq. (*Pro Hac Vice*)
craft@hughesellzey.com
Jarrett L. Ellzey, Esq. (*Pro Hac Vice*)
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 322-6387
Fax: (888) 995-3335

ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS

## <u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing document was electronically filed with the Clerk of this

Court using the CM/ECF system in accordance with the protocols for e-filing in the United States

District Court for the Middle District of Florida, Orlando Division, on <u>December 3, 2018</u>, and will

be served on all counsel of record who have consented to electronic notification *via* CM/ECF:

>  ***<u>Via CM/ECF</u>***
>  Dayle M. Van Hoose, Esq.
>  dvanhoose@sessions.legal
>  Ashley N. Rector, Esq.
>  arector@sessions.legal
>  Sessions, Fishman, Nathan & Israel, LLC
>  3350 Buschwood Park Drive, Ste. 195
>  Tampa, FL 33618
>  *Attorneys for defendant,*
>  *Navient Solutions, LLC*

>                                    */s/ Christopher W. Boss*
>                              Christopher W. Boss, Esq.